UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA M. ENGLEHART,

      Plaintiff,

v.                        Case No. 8:14-cv-444-T-33EAJ

CAREER EDUCATION CORPORATION,
ULTRASOUND TECHNICAL SERVICES,
INC., SANFORD-BROWN LIMITED,
INC.,

      Defendants.
_____/

### ORDER

This matter comes before the Court pursuant to Defendants Career Education Corporation, Ultrasound Technical Services, Inc., and Sanford-Brown Limited, Inc.'s Motion to Dismiss (Doc # 4), filed on February 28, 2014. On March 14, 2014, Plaintiff Diana M. Englehart filed a response in opposition to the Motion. (Doc. # 5). For the reasons stated below, the Court grants the Motion, and as a result, Count II of the Complaint is dismissed with prejudice.

### I.  Background

Career Education Corporation ("CEC") is a "publicly owned and listed stock corporation, owning and operating upwards of 90 on-ground schools throughout the United States." (Doc. # 2 at ¶ 9). "CEC trades under the symbol CECO

on the NASDAQ and is subject to the laws, rules, [and] regulations of the Securities Exchange Act, and the Securities and Exchange Commission" ("SEC"). (Id. at ¶ 10). Ultrasound Technical Services, Inc. and Sanford-Brown Limited, Inc. are wholly owned subsidiaries of CEC. (Id. at ¶¶ 5-6).

Beginning in January of 2008, Englehart was employed by Defendants as the Director of Career Services of Sanford Brown Institute in Tampa, Florida. (Id. at ¶¶ 11-12). In this position, Englehart was responsible for preparing the Career Services department's yearly budget, which included forecasts for future expenses, revenues, placements, and enrollment. (Id. at ¶¶ 17-18). The budget and forecasts were communicated to shareholders and the public. (Id. at ¶ 19).

According to the Complaint, on several occasions, Englehart voiced her concerns regarding proposed budgets and forecasts prepared by Sanford Brown Institute as she believed they contained "material misrepresentations related to placements and enrollment numbers." (Id. at ¶ 20). Specifically, in November of 2010, Englehart met with Jason Schnack – Vice President of Operations at Sanford Brown Institute – regarding her concerns with the "unrealistic percentage placement for students." (Id. at ¶ 21). Englehart

2

contends that Schnack replied "You must make it happen" and "The [s]hareholders need these numbers," and inferred that "if such numbers were not reached [Englehart] would be fired." (Id. at ¶ 22). Englehart submits that "Defendants wanted [Englehart's] department to exceed numbers required for accreditation and [Englehart's] merit increases and bonuses were tied to placement percentages." (Id. at ¶ 23).

> According to Englehart,
>
> The publishing of forecasts and budget for 2011 contain[ed] false and misleading information, overstated numbers [in] violation of The Securities Exchange Act of 1934, and the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"); and Rule 10b-5, the reporting provisions of Section 13(a) of the Exchange Act; and Rules 12b-20 and 13a-13 thereunder, the books and records provisions of Section 13b-5 of the Exchange Act and Rule 13b2-1 under the Exchange Act, and the lying to auditors provision of Rule 13b2-2 under the Exchange Act.

(Id. at ¶ 24).

At all relevant times, Englehart was under the supervision of Steve Dumerve – former President of Sanford Brown Institute, Tampa, Florida. (Id. at ¶ 16). In his position as President, Dumerve was responsible for preparing the yearly budget for the school, which included Englehart's department's budget. (Id. at ¶ 26). The Complaint provides

that Dumerve "consistently communicated his objections to CEC corporate staff about the school's proposed budgeted performance numbers and forecasts." (Id. at ¶ 27). Englehart was present during meetings with CEC corporate staff, in which Dumerve asserted these objections stating the forecasts "contained many material misrepresentations, including but not limited to unrealistic leads for new students, understated expenses, overstated student enrollment and revenues and placements." (Id. at ¶ 28).

According to the Complaint, an investigation by the New York Attorney General's Office ensued into Sanford Brown Institute's practices. (Id. at ¶ 29). Namely, the New York Attorney General was investigating whether CEC violated "New York and other state consumer protection, securities, finance, and other laws." (Id. at ¶ 30). Furthermore, class action lawsuits were pursued against CEC due to statements Defendants made during November of 2010, and August of 2011, relating to its business and operations that "were materially false and misleading at the time they were made." (Id. at ¶¶ 31-32).

Englehart submits that "CEC terminated Dumerve from his position to shield Attorney [G]eneral [O]ffices and investigators from being able to speak to him and in order to

4

silence him." (Id. at ¶ 33). Soon after, Englehart was placed on paid leave of absence. (Id. at ¶ 34). Then, in December of 2011, Englehart was terminated from her position allegedly "due to her objections to the proposed budget for her department and the concerns voiced over the forecast being unrealistic." (Id. at ¶ 35).

Englehart initiated this action in state court on November 27, 2013, alleging violations of the Florida Whistleblower Act (Count I) and the Dodd-Frank Reform Act – 15 U.S.C. § 78u-6 (Count II). See (Doc. # 2). Thereafter on February 21, 2014, Defendants timely removed this action contending this Court has federal question jurisdiction over this action. See (Doc. # 1). Defendants filed the present Motion to Dismiss on February 28, 2014, seeking to dismiss Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 4). Englehart filed a response in opposition to the Motion on March 14, 2014. (Doc. # 5). This Court has reviewed the Motion and the response thereto, and is otherwise fully advised in the premises.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v.

<u>Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).

Further, this Court favors the plaintiff with all reasonable

inferences from the allegations in the complaint. <u>Stephens v.</u>

<u>Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th

Cir. 1990)("On a motion to dismiss, the facts stated in [the]

complaint and all reasonable inferences therefrom are taken

as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal

citations omitted). Further, courts are not "bound to accept

as true a legal conclusion couched as a factual allegation."

<u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In accordance with <u>Twombly</u>, Federal Rule of Civil

Procedure 8(a) calls "for sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its

face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting

<u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must

include "factual content [that] allows the court to draw the

6

reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. **Analysis**

In Count II of the Complaint, Englehart asserts a violation of the Dodd-Frank Reform Act:

> [Englehart] was retaliated against and terminated from her employment with Defendants for opposing . . . Defendants' unlawful practices.

> Defendants' actions violate the Dodd-Frank Reform Act, H.R. 4173.

> As a direct and proximate result of Defendants' unlawful, retaliatory termination of [Englehart], [Englehart] has suffered and will continue to suffer, loss of earnings, loss of benefits, harm to her reputation and humiliation, emotional pain and suffering.

(Doc. # 2 at ¶¶ 52-54). In their Motion, however, Defendants submit that Count II of Englehart's Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted as Englehart "fails to allege an essential element to establish her whistleblower claim under the Dodd-Frank Reform Act": she "fails to allege – and cannot allege – that she provided any information to the [SEC] in a manner established by the SEC." (Doc. # 4 at 1-2).

To support their contention, Defendants cite to Asadi v. G.E. Energy (USA), L.L.C., 720 F.3d 620 (5th Cir. 2013),

wherein the Fifth Circuit Court of Appeals held that the Dodd-Frank Reform Act whistleblower-protection provision under 15 U.S.C. § 78u-6 "creates a private cause of action only for individuals who provide information relating to a violation of the securities laws to the SEC." Id. at 623.

In Asadi, the plaintiff claimed he was unlawfully terminated for making an internal complaint regarding a possible securities law violation in contravention of the Dodd-Frank Reform Act. Id. at 621. The plaintiff admitted, however, that he was not a "whistleblower" as defined in 15 U.S.C. § 78u-6(a)(6) because he did not provide any information to the SEC. Id. at 624. Accordingly, the defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that as the plaintiff did not qualify as a whistleblower, he was not entitled to protection under the whistleblower-protection provision. Id. at 621.

In response, the plaintiff maintained, as does Englehart, that "the whistleblower-protection provision should be construed to protect individuals who take actions that fall within [15 U.S.C. § 78u-6(h)(1)(A)(iii)] . . . even if they do not provide information to the SEC" due to a "perceived conflict between the statutory definition of 'whistleblower' in [15 U.S.C. § 78u-6(a)(6)] and the third

category of protected activity [in 15 U.S.C. § 78u-6(h)(1)(A)(iii)], which does not necessarily require disclosure of information to the SEC." Id. at 624.

Ultimately, the Fifth Circuit found that because the plaintiff failed to provide information relating to a violation of the securities law to the SEC, the plaintiff was not considered a whistleblower entitled to protection under the Dodd-Frank Reform Act. Id. at 630. In making its determination, the Fifth Circuit looked to the text of the relevant statute – 15 U.S.C. § 78u-6 - and found that "Under Dodd-Frank's plain language and structure, there is only one category of whistleblowers: individuals who provide information relating to a securities law violation to the SEC." Id. at 625. The Fifth Circuit further found that the text of 15 U.S.C. § 78u-6 "clearly and unambiguously provides a single definition of whistleblower," and therefore, "the whistleblower-protection provision[] does not contain conflicting definitions of the term 'whistleblower.'" Id. at 627.

In making its determination, the Fifth Circuit acknowledged but declined to follow several of the district court cases cited by Englehart that reached a contrary conclusion (i.e. that the whistleblower-protection provision,

as enacted, is either conflicting or ambiguous). See Egan v. TradingScreen, Inc., No. 10 CIV. 8202 LBS, 2011 WL 1672066, at *4-5 (S.D.N.Y. May 4, 2011)(finding that the anti-retaliation whistleblower protection provisions of the Dodd-Frank Reform Act require Plaintiff to show that he *either* provided information to the SEC *or* that his disclosures fell under the four categories listed in 15 U.S.C. § 78u-6(h)(1)(A)(iii)(emphasis added)); Kramer v. Trans-Lux Corp., No. 3:11-cv-1424 SRU, 2012 WL 4444820, at *3-5 (D. Conn. Sept. 25, 2012)("I do not believe it is unambiguously clear that the Dodd-Frank Act's retaliation provision only applies to those individuals who have provided information relating to a securities violation to the Commission, and have done so in a manner established by the Commission."); Nollner v. S. Baptist Convention, Inc., 852 F. Supp. 2d 986, 993-95 (M.D. Tenn. 2012)(finding that "the plain terms of anti-retaliation category (iii), which do not require reporting to the SEC, appear to conflict with the . . . definition of 'whistleblower' at § 78u-6(h)(1)(A)(iii), which defines a whistleblower as anyone who reports securities violations 'to the Commission.'").

According to Defendants, this Court should follow the ruling of Asadi, and find that Englehart is not a

"whistleblower" deserving of protection under the Dodd-Frank Reform Act. While Englehart concedes that she did not allege nor provide any information to the SEC or that "she initiated, testified, or assisted in any investigation or action of the SEC based upon her disclosures," she contends that she still should receive protection pursuant to 15 U.S.C § 78u-6(h)(1)(A)(iii), which does not require disclosure to the SEC. (Doc. # 5 at 5). Englehart submits that 15 U.S.C. § 78u-6(h)(1)(A)(iii) establishes a narrow exception to 15 U.S.C. § 78u-6(a)(6)'s definition of "whistleblower" and protects an employee who makes any of that provision's enumerated disclosures. (Id. at 6).

According to Englehart, a plain reading of the Dodd-Frank Reform Act shows that 15 U.S.C. § 78u-6(a)(6)'s definition of whistleblower conflicts with the third prong of the whistleblower-protection provision – 15 U.S.C. § 78u-6(h). (Id.). Specifically, Englehart posits that the whistleblower-protection provision explicitly prohibits retaliation against whistleblowers who provide information and testimony pursuant to 15 U.S.C. § 78u-6(h)(1)(A)(i)-(ii), and also protects whistleblowers who make disclosures falling into one of four categories enumerated in 15 U.S.C. § 78u-6(h)(1)(A)(iii), which do not require that disclosures be

made directly to the SEC. (Id.). Therefore, it is Englehart's contention that a literal reading of the definition of the term "whistleblower" in 15 U.S.C. § 78u-6(a)(6) would effectively invalidate § 78u-6(h)(1)(A)(iii)'s protection of whistleblower disclosures.

Englehart requests that this Court follow "numerous courts" and find that "the contradictory provisions of the Dodd-Frank Act are best harmonized by reading [15 U.S.C. § 78u-6(h)(1)(A)(iii)'s] protection of certain whistleblower disclosures not requiring reporting to the SEC as a narrow exception to [15 U.S.C § 78u-6(a)(6)'s] definition of whistleblower as one who reports to the SEC." (Id.); see Egan, 2011 WL 1672066, at *4-5 ("[A] literal reading of the definition of the term 'whistleblower' in 15 U.S.C. § 78u-6(a)(6), requiring reporting to the SEC, would effectively invalidate § 78u-6(h)(1)(A)(iii)'s protection of whistleblower disclosures that do not require reporting to the SEC."); Ellington v. Giacoumakis, No. CIV.A. 13-11791-RGS, 2013 WL 5631046, at *2-3 (D. Mass. Oct. 16, 2013)(same); Murray v. UBS Sec., LLC, No. 12 CIV. 5914 JMF, 2013 WL 2190084, at *3-7 (S.D.N.Y. May 21, 2013)("Section 78u-6(h)(1)(A)(iii) provides a narrow exception to Section 78u-6(a)(6)'s definition of a whistleblower as one who reports to

12

the SEC, and protects internal disclosures protected by the Sarbanes-Oxley Act and the 1934 Act."); Genberg v. Porter, 935 F. Supp. 2d 1094 (D. Colo. Mar. 25, 2013)(finding that 15 U.S.C. § 78u-6(h)(1)(A)(iii) should be interpreted as an exception to the whistleblower definition found in 15 U.S.C. § 78u-6(a)(6)); Kramer, 2012 WL 4444820, at *3-5 (D. Conn. Sept. 25, 2012)(same); Nollner, 852 F. Supp. 2d at 994, n.9 (M.D. Tenn. 2012)(discussing how Egan and the SEC have found that category (iii) provides a narrow exception to the definition of a whistleblower as someone who reports only "to the Commission."). Englehart submits that these courts have found that 15 U.S.C. § 78u-6(h)(1)(A)(iii) does not require a whistleblower to report any information to the SEC as long as her disclosures fall under one of the four categories of disclosures enumerated in 15 U.S.C. § 78u-6(h)(1)(A)(iii), which Englehart contends her disclosures do. (Doc. # 5 at 6-7).

As a result of the "competing, plausible interpretations" of 15 U.S.C. § 78u-6 (Id. at 8), Englehart further requests that this Court find that the statutory language of the whistleblower-protection provision is ambiguous, and thus, give deference to the SEC's 2011 interpretation of the provision and find that Englehart is a

whistleblower under the Dodd-Frank Reform Act. (<u>Id.</u> at 9)(quoting <u>Williams v. Sec'y, United States Dep't of Homeland Sec.</u>, 741 F.3d 1228 (11th Cir. 2014)(where "the statute is silent or ambiguous with respect to the specific issue," the Court is required to decide whether the rulemaking by the agency charged with implementing the statutory scheme regulation "is based on a permissible construction of the statute.")).

On August 12, 2011, the SEC – "the agency to whom Congress delegated authority to administer the whistleblower provision[] of the Dodd-Frank [Reform Act]" (Doc. # 5 at 10) – promulgated a final rule regarding the relationship between 15 U.S.C. § 78u-6(h), the whistleblower-protection provision, and 15 U.S.C. § 78u-6(a)(6), the provision defining the term "whistleblower:"

> b) Prohibition against retaliation:
>
> (1)   For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:
>
>> i.   You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;

14

      ii.    You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).

     iii.   The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

17 C.F.R. § 240.21F-2(b)(1).

"Congress enacted the Dodd-Frank Reform Act in the wake of the 2008 financial crisis." <u>Asadi</u>, 720 F.3d at 622. "Most of these provisions are concerned with a 'bounty' program that allows whistleblowers who report violations of the securities laws to the [SEC] to receive portions of money recovered by the Commission. However, the statute also contains a private cause of action for whistleblowers alleging retaliatory discharge or other discrimination." <u>Egan</u>, 2011 WL 1672066, at *2. The Dodd-Frank Reform Act defines a whistleblower as follows: "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." <u>See</u> 15 U.S.C. § 78u-6(a)(6).

Subsection (h), which contains the whistleblower-protection provision of the Dodd-Frank Reform Act, protects whistleblowers from retaliation and provides a private right

of action against employers who take retaliatory action
against the whistleblower:

> No employer may discharge, demote, suspend,
> threaten, harass, directly or indirectly, or in any
> other manner discriminate against, a whistleblower
> in the terms and conditions of employment because
> of any lawful act done by the whistleblower —
>
> (i)    in providing information to the Commission
>        in accordance with this section;
>
> (ii)   in initiating, testifying in, or assisting
>        in any investigation or judicial or
>        administrative action of the Commission
>        based upon or related to such information;
>        or
>
> (iii)  in making disclosures that are required or
>        protected under the Sarbanes-Oxley Act of
>        2002 (15 U.S.C. 7201 et seq.), this chapter,
>        including section 78j-1(m) of this title,
>        section 1513(e) of Title 18, and any other
>        law, rule, or regulation subject to the
>        jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii). Defendants argue that
the plain text of the statutory definition contained in 15
U.S.C. § 78u-6(a) requires that a whistleblower report to the
SEC in order to invoke the whistleblower-protection provision
of the Act, which Englehart did not do, whereas, Englehart
contends that this interpretation would result in an
unreasonable reading of the statute.

16

In order for this Court to determine whether Englehart, who "voiced her objections of [Defendants'] unlawful practices to, among other people, the Defendants' Vice President of Operations" (Doc. # 5 at ¶ 2), is entitled to protection under 15 U.S.C. § 78u-6(h), even though she did not provide information to the SEC, this Court must decide whether the relevant statute is ambiguous. See Asadi, 720 F.3d at 622 ("When faced with questions of statutory construction, '[the Court] must first determine whether the statutory text is plain and unambiguous' and, 'if it is, [the Court] must apply the statute according to its terms.'"). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). If the statutory text is unambiguous, the "inquiry begins and ends with the text." BedRoc Ltd. v. United States, 541 U.S. 176, 183 (1997).

The first step in statutory interpretation is asking "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). 15 U.S.C. § 78u-

6(a) contains a definition of the term "whistleblower," which indicates how Congress intends the term to be construed throughout the statute. With that in mind, Congress drafted 15 U.S.C. § 78u-6(h)(1)(A), to specifically state: "No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a *whistleblower* in the terms and conditions of employment because of any lawful act done by the whistleblower." 15 U.S.C. § 78u-6(h)(1)(A)(emphasis added). As stated in Asadi,

> If Congress had selected the terms "individual" or "employee," [a finding of ambiguity] would follow more naturally because the use of such broader terms would indicate that Congress intended any individual or employee – not just those individuals or employees who qualify as a "whistleblower" – to be protected from retaliatory actions by their employers. Congress, however, used the term "whistleblower" throughout subsection (h) and, therefore, [the Court] must give that language effect.

Asadi, 720 F.3d at 626-27. Therefore, the Court finds that Congress, when drafting 15 U.S.C. § 78u-6, intended the whistleblower-protection provision to apply explicitly to an individual who falls within the definition "whistleblower" – "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of

18

the securities laws to the Commission, in a manner established by rule or regulation, by the Commission." See 15 U.S.C. § 78u-6(a).

The fact that numerous courts have interpreted the same statutory language differently does not render the statute ambiguous, as argued by Englehart. Generally, anti-retaliation provisions are construed liberally to protect employees who complain about or report illegal conduct. However, in the context of the Dodd-Frank Reform Act, Congress chose to provide a restrictive definition of "whistleblower." It is Congress's prerogative to fashion the statute accordingly. See Morante-Navarro v. T&Y Pine Straw, Inc., 350 F.3d 1163, 1167 (11th Cir. 2003)(stating that "Our ultimate goal is to give effect to congressional intent.").

In making its determination, the Court is mindful that the third category in 15 U.S.C. § 78u-6(h)(1)(A) does offer protection from retaliation. However, this protection does not arise from an individual's disclosure to the SEC, but from "other possible required or protected disclosure(s)." Asadi, 720 F.3d at 627. The Fifth Circuit in Asadi set forth an example illustrating how an individual can still receive protection under 15 U.S.C. § 78u-6(h)(1)(A)(iii), even when this Court "construe[s] the protection from retaliation under

19

Dodd-Frank to apply only to individuals who qualify as 'whistleblowers' under the statutory definition of that term," which this Court finds informative:

> Assume a mid-level manager discovers a securities law violation. On the day he makes this discovery, he immediately reports this securities law violation (1) to his company's chief executive officer ("CEO") and (2) to the SEC. Unfortunately for the mid-level manager, the CEO, who is not yet aware of the disclosure to the SEC, immediately fires the mid-level manager. The mid-level manager, clearly a "whistleblower" as defined in Dodd-Frank because he provided information to the SEC relating to a securities law violation, would be unable to prove that he was retaliated against because of the report to the SEC. Accordingly, the first and second category of protected activity would not shield this whistleblower from retaliation. **The third category of protected activity, however, protects the mid-level manager.** In this scenario, the internal disclosure to the CEO, a person with supervisory authority over the mid-level manager, is protected under 18 U.S.C. § 1514A, the anti-retaliation provision enacted as part of the Sarbanes-Oxley Act of 2002 ("the SOX anti-retaliation provision"). Accordingly, even though the CEO was not aware of the report to the SEC at the time he terminated the mid-level manager, the mid-level manager can state a claim under the Dodd-Frank whistleblower-protection provision because he was a "whistleblower" and suffered retaliation based on his disclosure to the CEO, which was protected under SOX.

Id. at 627-28 (emphasis added).

Furthermore, the Court finds that allowing individuals who do not satisfy the Dodd-Frank Reform Act definition of "whistleblower" to bring a claim under 15 U.S.C. § 78u-6(h) would contradict the section's title – "Protection of Whistleblowers." See Banko v. Apple Inc., No. cv-13-02977 RS, 2013 WL 7394596, at *3 (N.D. Cal. Sept. 27, 2013)(finding that "allowing individuals who do not satisfy the Dodd-Frank definition of 'whistleblower' to bring a claim under Section 78u-6(h) would contradict the section's title. Section 78u-6 is titled 'whistleblower protection.'"). While "section headings cannot limit the plain meaning of the text," this heading lends support to the conclusion that 15 U.S.C. § 78u-6(h) applies only to those individuals who qualify as "whistleblowers" as defined in 15 U.S.C. § 78u-6(a)(6). See Fla. Dept. of Rev. v. Picadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008)("To be sure, a subchapter heading cannot substitute for the operative text of a statute.").

It is not the role of this Court to second guess the reasoning or providence of unambiguous statutory language or expand explicit definitions within a statute to reach a desired result. Therefore, upon consideration of the arguments presented by the parties as well as an independent review of the relevant authority, the Court finds that "the

plain language of [15 U.S.C. § 78u-6] limits protection under the Dodd-Frank whistleblower-protection provision to those individuals who provide 'information relating to a violation of the securities laws' to the SEC." <u>Asadi</u>, 720 at 630. As Englehart concedes she did not provide information to the SEC, she is not a "whistleblower" under the Dodd-Frank Reform Act. As a result, Defendants' Motion to Dismiss is granted and Count II of the Complaint is dismissed with prejudice.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Career Education Corporation, Ultrasound Technical Services, Inc., and Sanford Brown Limited, Inc.'s Motion to Dismiss (Doc # 4) is **GRANTED**.

(2) Count II of the Complaint is dismissed with prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of May, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

22